## THE OSAGE *v.* RIDGWAY.

*(District Court, E. D. Pennsylvania.  May 18, 1885.)*

TOWAGE—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—RUNNING AGROUND.
　　On examination of the evidence, *held*, that the defense of contributory negligence is not made out, and that the libelant is entitled to damages.

In Admiralty.

*Gibbons & Henry,* for libelant.

*H. R. Edmunds,* for respondent.

BUTLER, J. The bark Osage anchored near the breakwater, in the Delaware bay, and soon after engaged the respondent to tow her to Philadelphia. The bark's hawser was taken, and the tug started on her course. A short time after, the bark struck bottom, the hawser

parted, and she drifted upon the shoals, sustaining some injury, and being subjected to considerable charges in getting off. Compensation for this injury, and these charges, she claims from the respondent.

The defense is that she was anchored in a dangerous place, from which she could not be removed without striking, and that the hawser was defective. The first branch of this proposition is not sustained by the evidence. While the testimony of Capt. Hallenger, of the tug, tends to support it, he is not sustained by surrounding circumstances, and is flatly contradicted by several witnesses, who swear directly and positively to the fact. It seems incredible that Capt. Hallenger should have said nothing of the danger at the time, if it existed. It concerned him very seriously, as well as the libelant, imposing, as it did, on both the necessity for especial caution in the work about to be commenced. He accounts for his silence by saying that he desired to avoid the appearance of forcing his services on the bark, or exaggerating their importance. This is an admission that he believed the bark to be ignorant of her danger,—that she had not touched bottom at the time; and is furthermore indicative of a degree of modesty very unusual in the captains of tug-boats. To withhold such information, under such circumstances, would be highly improper; and it cannot be believed that any captain would do it.

The master of the bark and his officers say he entered the bay in pursuance of the directions in the chart, taking bearings from the breakwater light, and sounding as he proceeded and came to anchor. There is no reason, in my judgment, to doubt that he anchored where his testimony points out,—a place showing three and one-half fathoms at low water, marking, as the witnesses say, about five fathoms when he reached it, the tide then being up. But if it were true that the bark lay where Capt. Hallenger alleges, this fact would afford no excuse. He knew the locality familiarly. If it was not safe to undertake her removal at the time, he was guilty of gross negligence in attempting it without informing her master, and thus allowing him to judge of the risk and the propriety of moving, or remaining where he was. He also knew that in a short time the tide would be up, and her removal, with proper care, be entirely safe. He had but to wait for a brief period, and then bear southward to find ample water. Instead of this he concealed the danger, started with the water at its lowest condition, and, according to his own statement, ran a course that necessarily must, as it would seem, take him into shallower water.

The other branch of the respondent's proposition—that the hawser was defective—is no better supported. The decided weight of the testimony is against it. Bringing the hawser into court for inspection is not a proper method of ascertaining its condition; the question is one for experts. To the extent such information is before me, the conclusion is against the respondent. The hawser appears to have been nearly new, and amply sufficient for towing the bark

while afloat. If the master of the tug expected to tow her on the bottom, (at times,) as may be inferred from his testimony, he should have so informed her master, and exercised extraordinary care respecting her fastenings. It might have been a serious question, under the circumstances, whether one hawser, of ordinary strength, would be sufficient. It is unnecessary to enlarge on the subject. As already indicated, I believe the bark was safely anchored, with ample water for maneuvering and getting away; that the hawser was of ordinary strength, and that the disaster occurred from the tug's failure to keep sufficiently southward in starting, hugging the shoals too closely, in the desire to shorten his course; but that, if the master, Hallenger, is right respecting the bark's anchorage and situation, then it resulted from his failure to await the effect of the tide, and to inform the bark of the danger in moving at the time.

A decree must be entered in favor of the libelant